**2026 UT App 119**

## THE UTAH COURT OF APPEALS

SEVIER COUNTY SCHOOL DISTRICT,
Appellant,
*v.*
SHANA KUMMER AND JARED KUMMER,
Appellees.

Opinion
No. 20250825-CA
Filed August 6, 2026

Sixth District Court, Richfield Department
The Honorable Mandy Larsen
No. 230600084

Derek E. Brown and Peggy E. Stone,
Attorneys for Appellant

Amy L. Martz, Attorney for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

HARRIS, Judge:

¶1      Shana Kummer and Jared Kummer (collectively, the Kummers) want to obtain a copy of a video recording of events that occurred one day in their daughter's (Daughter) middle-school physical education class. In their view, Utah's Government Records Access and Management Act (GRAMA) allows them to obtain a copy of the video. The Sevier County School District (the District) allowed the Kummers to view the video but has resisted actually giving them a copy. The Kummers challenged the District's decision, and both the State Records Committee (the SRC) and the district court ordered the District to provide the Kummers with a copy of the video as long as the Kummers paid the costs of redacting the faces of all students other than Daughter.

¶2      The District now appeals the court's decision, and it makes two arguments, both invoking the federal Family Educational Rights and Privacy Act (FERPA). First, the District asserts that the video, as a FERPA education record, falls outside the scope of GRAMA entirely. Second, it notes that GRAMA—by its terms—yields to FERPA when it comes to setting forth the disclosure requirements of FERPA records, and it contends that FERPA's disclosure requirements were satisfied when it allowed the Kummers to view the video. We disagree with the District's first argument but find its second one persuasive, and on that basis we reverse the district court's order directing the District to produce a redacted copy of the video.

BACKGROUND

¶3      One day, Daughter's physical education teacher required the students to "perform significant continued physical cardiovascular and calisthenic activity" throughout a forty-five-minute physical education class "as a form of punishment for . . . vandalism" that had occurred at the school. Afterward, Daughter complained of injuries from the activity, and the Kummers raised the matter with the District, asking it to investigate. Later, the District told the Kummers that it had looked into the incident and that "appropriate action had been taken." The Kummers then requested additional information, including a copy of the video footage "taken from a camera positioned in the corner of [the] gymnasium." Daughter can be seen in that video, but so can about twenty other students. In response to the Kummers' request, the District provided the Kummers with a four-page written summary of the video's content, and in addition it offered to allow the Kummers to view the unredacted video at the school. The Kummers took the District up on that offer.

¶4 Shortly thereafter, Shana[1] filed a GRAMA request with the District, asking it to give her a copy of the video. The District denied this request, offering its view that the "information requested [was] not a public record." Shana then appealed that decision to the District's chief administrative officer, who also denied the request, stating that the video was "not subject to GRAMA." Next, Shana appealed to the SRC, which held a hearing on the matter and later issued a written ruling reversing (at least in part) the District's decision. In that ruling, the SRC agreed with the District that the video was an educational record under FERPA, but it determined that GRAMA nevertheless applied to the situation, and it concluded that, under GRAMA, Shana was entitled to receive a redacted copy of the video as long as she was willing to pay the costs associated with redaction.

¶5 Meanwhile, Jared had filed a GRAMA request of his own, separately asking for, among other things, a copy of the video. The District gave Jared some of the records he asked for, but not the video, based on its view that the video was not subject to GRAMA. Jared then appealed the denial to the District's chief administrative officer, who gave Jared some additional documents, but not the video. Jared appealed to the SRC, which held a hearing on the matter and later issued a written ruling. In that ruling, the SRC made the same decision that it had made in Shana's appeal: that Jared was entitled to receive a redacted copy of the video as long as he was willing to pay the costs associated with redaction.

¶6 The District then filed a petition for judicial review in the district court, asking the court to set aside the SRC's rulings in both Shana's and Jared's cases and to make a determination that the video was not subject to disclosure under GRAMA. Later, the

---

1. Because Shana Kummer and Jared Kummer share a last name, we refer to them individually by their first names, with no disrespect intended by the apparent informality.

District filed a motion for summary judgment, in which it asserted that FERPA education records are not subject to GRAMA at all and, alternatively, that it had complied with GRAMA and FERPA in any event because it had allowed the Kummers to view the unredacted video at the school.

¶7 The court denied the motion. In its ruling, the court rejected the District's argument that a 2016 statutory amendment made FERPA records "immune from GRAMA requests." It further ruled that the relevant language from GRAMA was unambiguous and "d[id] not exempt FERPA from GRAMA requests, it only state[d] that disclosure [was] governed by FERPA's more specific provisions." But ultimately, the court held that there was still a factual dispute between the parties regarding redaction since "neither party ha[d] presented sufficient evidence about available blurring software" and that this factual dispute precluded a grant of summary judgment.

¶8 Later, the District asked the court to reconsider its summary judgment ruling, and the Kummers responded by filing a summary judgment motion of their own. The court denied both motions, reiterating that there remained a factual issue for adjudication about whether the District could obtain a software program to redact the video.

¶9 Thereafter, the District provided the court with an affidavit from the District's superintendent indicating that the District had two options for redacting the video: (a) utilizing District employees, who would need training, or (b) hiring an outside vendor. And in the affidavit, the superintendent set forth the costs associated with the two options. Based on this affidavit, the District took the position that there was "no longer a dispute about" redaction, and it asked the court to simply enter a final order in the case.

¶10 The court then entered a final order, starting with the premise that it was "uncontested" in the case "that the video is a FERPA-protected record." The court held, however, that under Utah law, "a FERPA-protected education record may be disclosed pursuant to GRAMA, but FERPA's requirements govern the disclosure." With regard to the video specifically, the court concluded that "[t]he release of the video, once properly redacted, is in compliance with" FERPA. The court thus held that the Kummers were entitled to "obtain a redacted video so long as they [bore] the cost of the District's redaction of the other students' personally identifying information."

ISSUES AND STANDARD OF REVIEW

¶11 The District appeals the district court's order. It continues to maintain that it is under no obligation to provide the Kummers with a copy of the video, redacted or not. The District makes the same two arguments it made in its summary judgment motion: that GRAMA does not apply at all to FERPA education records and, alternatively, even if it did, the District complied with FERPA's disclosure requirements by allowing the Kummers to "inspect and review" the video. As applied to either argument, the dispositive issue is one of statutory interpretation. "The proper interpretation and application of a statute is a question of law reviewed for correctness." *Mackey v. Krause*, 2025 UT 37, ¶ 30, 575 P.3d 1162 (cleaned up); *see also Cardiff Wales, LLC v. Washington County School Dist.*, 2022 UT 19, ¶ 16, 511 P.3d 1155 ("We review questions of statutory interpretation for correctness, affording no deference to the lower court's legal conclusions." (cleaned up)).

ANALYSIS

¶12 The District presents two arguments on appeal. First, it contends that FERPA education records are outside the reach of

GRAMA, and it attempts to distinguish *Bryner v. Canyons School District*, 2015 UT App 131, 351 P.3d 852—which held to the contrary—by asserting that *Bryner* was effectively overruled by a 2016 amendment to GRAMA. Second, the District argues, in the alternative, that even if GRAMA applies to FERPA education records, FERPA governs the extent to which education records must be disclosed, and the District asserts that it must still prevail here because it complied with FERPA's disclosure requirements when it allowed the Kummers to "inspect and review" the video. We disagree with the District's first argument, but we agree with the District's alternative argument that it has fully complied with FERPA's—and therefore GRAMA's—disclosure requirements.

## I. The Intersection Between GRAMA and FERPA

¶13 The District first argues that FERPA education records are completely outside the scope and reach of GRAMA and that litigants may therefore not utilize GRAMA to obtain such records. The District acknowledges that we held to the contrary in *Bryner*, but it asserts that a 2016 amendment to GRAMA effectively overruled *Bryner*. We disagree.

¶14 In *Bryner*, a parent filed a GRAMA request with his child's school district in which he asked for video footage of an "altercation" his child had with other students at school. *See id.* ¶¶ 3–4. The school district denied the request because it determined that the video "constituted an 'education record' as defined by FERPA" and therefore could not "be accessed under a GRAMA request." *Id.* ¶¶ 4–5. The school district also refused to produce the video because it "contained . . . personally identifiable information of students other than [the parent's] child," and it said it "would only release the [v]ideo . . . if and when it obtained written consent from all parents of the other students shown in the [v]ideo." *Id.* ¶ 4. Disappointed with this outcome, the parent sought relief from the district court, which ultimately held that the parent's "GRAMA request was subject to

FERPA" and that the school district "had properly denied [the parent's] request to disclose an unredacted copy of the [v]ideo." *Id.* ¶¶ 6, 8. However, the court also ruled that if the parent wanted to pay for redaction, the school district would be required to provide a redacted copy of the video to the parent. *See id.* ¶¶ 8–9. The parent appealed. *See id.* ¶ 9.

¶15 On appeal, we discussed the intersection between GRAMA and FERPA, and we held that "FERPA's requirements govern the disclosure under GRAMA of any records that fall within FERPA's reach." *Id.* ¶ 15. We therefore used language from FERPA in analyzing whether, and to what extent, the school district was required to disclose the video to the parent. *See id.* ¶ 28. But we nevertheless held that "while FERPA's specific provisions will control in the event of an irreconcilable conflict, GRAMA's provisions will still apply so long as they are not inconsistent with FERPA." *Id.* ¶ 29 (cleaned up). We therefore held that "GRAMA's provisions regarding redaction and fees" applied to the parent's request. *Id.* On this basis, we affirmed the lower court's determination that the video in question was "an education record subject to FERPA" and that the parent could obtain a redacted copy of the video if he paid the costs of redaction. *Id.* ¶ 33. There is no indication in the *Bryner* opinion that the school district ever offered to allow the parent to view the video at the school or that the school district ever took the position that such an offer would satisfy FERPA.

¶16 In reaching our decision in *Bryner*, we were interpreting the version of GRAMA in effect at the time. *See id.* ¶ 14. That version had a provision (Section 107) stating that GRAMA did "not apply" to records "containing private health information." *See* Utah Code § 63G-2-107 (2012). But that provision didn't apply to the record at issue in *Bryner*—which contained no private health information—and no GRAMA provision specifically referred to FERPA. Instead, the record in question in *Bryner*—as an education record under FERPA—was governed by a different provision of

GRAMA that discussed "records 'to which access is restricted pursuant to . . . another state statute, federal statute, or federal regulation, including records for which access is governed or restricted as a condition of participation in a state or federal program or for receiving state or federal funds.'" *See Bryner*, 2015 UT App 131, ¶ 14 (emphasis omitted) (quoting Utah Code § 63G-2-201(3)(b) (2012)). Under the then-applicable version of GRAMA, disclosure of such records was "governed by the specific provisions of" the statute or regulation imposing the restrictions. *Id.* (quoting Utah Code § 63G-2-201(6)(a) (2012)). We noted that FERPA contains restrictions on the disclosure of education records. *See id.* ¶ 15. And we further noted that the federal government "provides funds to those educational institutions that comply with FERPA on the condition that" those institutions follow FERPA's rules for disclosing education records. *Id.* (cleaned up). Interpreting these GRAMA provisions, we concluded that "FERPA's requirements govern the disclosure under GRAMA of any records that fall within FERPA's reach." *Id.*

¶17   In 2016, the year after *Bryner* was issued, our legislature amended GRAMA. In particular, it amended Section 107 to specify that "[t]he disclosure of an education record as defined in [FERPA] that is controlled or maintained by a governmental entity shall be governed by [FERPA]." *See* Utah Code § 63G-2-107(2) (2016). But it left the provision regarding protected health information substantively intact, with that provision continuing to state that GRAMA "does not apply to a record containing protected health information." *Id.* § 63G-2-107(1).

¶18   The District asserts that this 2016 amendment operated to effectively overrule *Bryner* and clarify that FERPA education records are "outside GRAMA's reach." We disagree; to the contrary, the 2016 amendment is entirely consistent with *Bryner*.

¶19   When considering a question of statutory interpretation, we must keep in mind our supreme court's instruction that "our

primary goal is to evince the true intent and purpose of the legislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up). "The best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (cleaned up). Courts "assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning" and that "the expression of one [term] should be interpreted as the exclusion of another." *Id.* (cleaned up). However, we must not view sections of a statute in isolation; instead, the inquiry "requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole." *State v. Hatfield*, 2020 UT 1, ¶ 16, 462 P.3d 330 (cleaned up). Thus, "we give effect to every word of a statute, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous." *Bountiful City v. Baize*, 2021 UT 9, ¶ 42, 487 P.3d 71 (cleaned up).

¶20 The language of the 2016 statutory amendment and the language we used in *Bryner* match almost perfectly. In *Bryner*, we held that "FERPA's requirements *govern* the *disclosure* under GRAMA of any records that fall within FERPA's reach." 2015 UT App 131, ¶ 15 (emphasis added). And in the 2016 statutory amendment, our legislature clarified that "[t]he *disclosure* of" FERPA records "shall be *governed* by" FERPA. *See* Utah Code § 63G-2-107(2) (2016) (emphasis added). The legislature's use of the exact same words that we used in *Bryner* is a telling sign that it meant to codify, not overrule, that case's holding.

¶21 Moreover, our legislature left intact the statutory provision regarding records containing protected health information, continuing to specify that GRAMA "does not apply" at all to such records. *Id.* § 63G-2-107(1). Thus, in the same statutory section—Section 107—the legislature used language that plainly indicates that health records are completely outside GRAMA's reach. The legislature opted not to use that same language in the subsection of Section 107 dealing with FERPA records, instead opting to use

the language we used in *Bryner*. Had the legislature intended to completely remove FERPA records from GRAMA's reach, it could easily have done so by indicating that GRAMA "does not apply" to those records. It opted not to do so, and we must give voice to that choice. *See Belnap v. Howard*, 2019 UT 9, ¶ 27, 437 P.3d 355 (stating that, when interpreting a statute, we "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful" (cleaned up)).

¶22    The District resists this conclusion by directing our attention to comments made by certain legislators during legislative debates about the 2016 amendments to GRAMA, arguing that this "legislative history shows the intent to remove FERPA-protected records from GRAMA's reach." We need not wrestle with this argument because "it is elementary that we do not seek guidance from legislative history and relevant policy considerations when the language of the statute is clear and unambiguous."[2] *Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT

---

2. Even if we were to engage with the legislative comments to which the District directs our attention, such engagement would not change our analysis. As an initial matter, examination of legislative history involves "potential pitfalls in attempting to divine the intent of a legislative body from a hand-picked selection of arguably favorable comments." *See D.A. v. D.H.*, 2014 UT App 138, ¶ 18 n.3, 329 P.3d 828. Indeed, one former justice of our supreme court was of the view that a legislature has no collective intent for us to discover, because the passage of every statute is the result of a legislative compromise among "those who preferred a stronger bill, . . . others who wanted a weaker one (or none at all), and perhaps . . . some who had a different goal altogether (through logrolling) or even no sense of the matter at all (due to apathy)." *See Gressman v. State*, 2013 UT 63, ¶ 69, 323 P.3d 998 (Lee, J., dissenting). And here, the comments upon which

(continued…)

1, ¶ 31, 506 P.3d 509 (cleaned up). In this situation, as we have explained, the text of the 2016 amendment to Section 107 is clear and unambiguous, so "it must be held to mean what it expresses, and no room is left for construction." *Id.* (cleaned up).

¶23    After 2016, GRAMA was clearer than ever: the "disclosure" of FERPA education records pursuant to GRAMA was "governed by" the terms of FERPA. *See* Utah Code § 63G-2-107(2) (2016). That is the same language we used in *Bryner*, and that language is unambiguous. It requires that questions relating to whether (and to what extent) FERPA education records are disclosable pursuant to a GRAMA request are to be governed by the disclosure standards set forth in FERPA. But nothing in GRAMA indicates that FERPA records are—like records containing protected health information—outside GRAMA's reach entirely. Thus, the 2016 amendment prescribes the same result we reached in *Bryner*: that FERPA sets the requirements for disclosure of

---

the District relies come from just two legislators and therefore do not necessarily reflect the views of the entire body. Moreover, those comments are themselves ambiguous on the relevant point, with the legislators at some points stating that the 2016 amendment would make education records "not subject to GRAMA" but at other points stating that the bill will make such records "not subject to disclosure pursuant to GRAMA." The former statement would seem to support the District's current litigation position, but the latter not so much. And in any event, the former statement is directly at odds with the text the legislature chose to use in enacting the 2016 amendment—the same words we used in *Bryner*. It should go without saying that when the text of a statute conflicts with a piece of legislative history, the text of the statute controls. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material.").

education records under GRAMA, while GRAMA provides the framework (as applicable to things like fees, deadlines, and appeals) for how the disclosure is to occur. We therefore reject the District's assertion that FERPA education records are completely outside GRAMA's reach.

## II. FERPA's "Inspect and Review" Requirement

¶24 Next, and in the alternative, the District asserts that it fully satisfied FERPA's disclosure requirements—which are, by statutory definition, also GRAMA's disclosure requirements in this case—by allowing the Kummers to "inspect and review" the unredacted video at the school, and that the District has no additional obligation to disclose anything more to the Kummers. On this point, the District is correct.

¶25 As we established in the preceding section, *see supra* ¶ 23, GRAMA provides that the "disclosure of" a FERPA education record "shall be governed by" FERPA. *See* Utah Code § 63G-2-107(2) (2016).[3] And all parties to this appeal agree that the video in question is a FERPA education record. We thus turn to FERPA to ascertain what the District's disclosure requirements are.

¶26 FERPA requires "any educational agency or institution" that accepts federal funds to allow parents to "inspect and review" their child's education records. *See* 20 U.S.C. § 1232g(a)(1)(A). The question here is whether the District satisfied this "inspect and review" requirement by allowing the

---

3. The language from the 2016 amendment to GRAMA remained in effect at the time of the facts giving rise to this appeal. The parties thus agree that the language of the 2016 amendment applies to the analysis in this case. We therefore apply that version of the statute here.

Kummers to watch the video, or whether the District is further required to provide the Kummers with a copy of the video.

¶27    FERPA itself does not offer any additional clarity as to what "inspect and review" means, and in this situation, we examine the ordinary meaning of those terms, starting with dictionary definitions. *See O'Hearon v. Hansen*, 2017 UT App 214, ¶ 25, 409 P.3d 85 ("A starting point for a court's assessment of ordinary meaning is the dictionary." (cleaned up)). The word "inspect" is defined as "to view closely in critical appraisal" or to "look over." *Inspect*, Merriam-Webster, https://www.merriam-webster.com/dictionary/inspect [https://perma.cc/NH79-CKFF]; *see also Inspection*, Black's Law Dictionary (12th ed. 2024) (defining "inspection" as "a careful examination of something"). And "review" is defined as "an act or process of carefully looking at or examining the quality, condition, etc., of something or someone." *Review*, Merriam-Webster, https://www.merriam-webster.com /dictionary/review [https://perma.cc/2JQ2-23AX]; *see also Review*, Black's Law Dictionary (12th ed. 2024) (defining "review" as the "consideration, inspection, or reexamination of a subject or thing"). Using these definitions, the District has a strong argument that it has already discharged its disclosure obligations by allowing the Kummers to watch the video at the school; after all, by watching the video, the Kummers were able to view the video closely, examine it, and carefully look at it.

¶28    Moreover, the federal government has issued guidance on this point, and it has clearly expressed its view that a school district has complied with the "inspect and review" requirement if it allows parents to view, watch, or examine the records at the school. Specifically, the federal government's view is that a "school . . . is generally not required to provide an eligible student with *copies* of education records unless circumstances effectively prevent an eligible student from exercising their right to inspect and review the education records." U.S. Dep't Educ., Student Privacy Policy Office, *An Eligible Student Guide to the Family*

*Educational Rights and Privacy Act (FERPA)* 2 (2023), https://studentprivacy.ed.gov/sites/default/files/resource_docum ent/file/An%20Eligible%20Student%20Guide%20to%20FERPA_0 .pdf [https://perma.cc/P2EW-V33W]; *see also C.S.A. v. Bellevue School Dist. No. 405*, 557 P.3d 268, 280 n.22 (Wash. Ct. App. 2024) ("We note that FERPA calls for a parent's right to inspect or review records but does not require a school to provide copies of education records."). And even more specifically, the federal government has indicated that "[w]hen a video is an education record of multiple students . . . , FERPA requires the [school] to allow, upon request, an individual parent of a student . . . to whom the video directly relates to inspect and review the video." U.S. Dep't Educ., *If a Video Is an Education Record for Multiple Students, Can a Parent of One of the Students or the Eligible Student View the Video?*, https://studentprivacy.ed.gov/faq/if-video-education-record-multiple-students-can-parent-one-students-or-eligible-student-view [https://perma.cc/2MUT-JMJA]. But the federal government has further indicated that "FERPA generally does not require the educational agency or institution to release copies of the video to the parent or eligible student," *id.*, unless "circumstances effectively prevent the parent or eligible student from exercising the right to inspect and review the student's education records," *see* 34 C.F.R. § 99.10(d) (stating that, in such situations, a school "shall . . . [p]rovide the parent or eligible student with a copy of the records requested" or "[m]ake other arrangements").

¶29 Given this guidance and the plain meanings of the words "inspect and review," we agree with the District that it has fully satisfied FERPA's disclosure requirements—and therefore GRAMA's disclosure requirements, because GRAMA incorporates FERPA's disclosure requirements—by allowing the Kummers to watch the unredacted video at the school. Although a school district would not necessarily violate FERPA by providing a parent with a copy of a redacted video, school

districts are not compelled by either FERPA or GRAMA to do so. *See C.S.A. v. Bellevue School Dist. No. 405*, 557 P.3d at 280 n.22 (observing that FERPA "does not require a school to provide copies of education records" if it allows parents to "inspect and review" them, but that "providing a copy of a video without the consent of affected students does not violate FERPA if the parents requesting the video would otherwise have the right to inspect and review" it). A school district fully satisfies those obligations if it allows parents to inspect and review the record in question, which the District did here.

¶30   We recognize that, in *Bryner*, we affirmed the district court's decision to require the school district to provide a redacted copy of the video in question. *See* 2015 UT App 131, ¶ 33. But in that case, there is no indication that the school district made the same alternative argument that the District is making here, namely, that it satisfied FERPA by allowing the parent to watch the video. Indeed, there is no indication in *Bryner* that the parent was ever given the opportunity to watch the video at all. *See id.* ¶ 4 (intimating that the parent never had an opportunity to watch the video before making his GRAMA request). Thus, while *Bryner* did grapple with the question as to whether FERPA records are subject to GRAMA, it did not concern itself with the question as to whether FERPA's disclosure requirements are satisfied if the school district allows the parent to watch the video. We now answer that question, and we do so in the District's favor.

CONCLUSION

¶31   The 2016 amendment to GRAMA did not remove FERPA education records from GRAMA's reach. Under both that amendment and *Bryner*, FERPA education records remain subject to GRAMA, but the disclosure of such records is governed by FERPA, which requires the District to allow the Kummers to "inspect and review" the video in question. The District fully

satisfied that obligation when it allowed the Kummers to watch that video at the school. While the District could have—without violating FERPA—given the Kummers a redacted copy of the video (as occurred in *Bryner*), the District was not required to do so once it had discharged its FERPA disclosure obligation by allowing the Kummers to watch the video.

¶32    For these reasons, we reverse the district court's order requiring the District to provide the Kummers with a redacted copy of the video.[4]

––––––––––

4. The Kummers request attorney fees under rule 33 of the Utah Rules of Appellate Procedure. That rule explains that if an appellate court determines that an appeal is "frivolous," the court "will award just damages, which may include . . . reasonable attorney fees, to the prevailing party." Utah R. App. P. 33(a). We deny this request. Fees are to be awarded under this rule "only in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Marroquin v. Marroquin*, 2019 UT App 38, ¶ 36, 440 P.3d 757 (cleaned up). While we did reject the District's first argument, it was not frivolous, and the District ultimately prevailed on its second argument. Thus, the District's appeal is far from frivolous.